UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORY EDUKERE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. CV 05-4227 RT<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

The Court makes the following Findings of Fact[1] and Conclusions of Law:

**FINDINGS OF FACT**

1. Plaintiff, Glory Edukere, is married to Godwin Edukere.
2. Plaintiff married Godwin Edukere on or about June 7, 1989.
3. Plaintiff and Mr. Edukere are presently married.
4. Plaintiff immigrated to the United States in 1987.
5. Following her migration to the United States, Plaintiff lived with Mr. Edukere prior to their marriage.

---

[1] The findings of fact are based on the court's notes of the trial testimony of witnesses and the exhibits admitted into evidence.

6. Prior to their marriage in 1989, Plaintiff gave Mr. Edukere $7,000.00 in cash to keep for her.

7. During the period 1987 through 1994, Mr. Edukere and Plaintiff had separate bank savings accounts.

8. Mr. Edukere deposited the $7,000.00 into his separate bank savings account.

9. Prior to their marriage, Mr. Edukere was an independent owner and operator of a taxi-cab business. He bought the business in 1987.

10. Mr. Edukere continued to own and operate the taxi-cab business following his marriage to Plaintiff in 1989.

11. On or about 1993, Mr. Edukere sold the independently operated taxi-cab business.

12. Upon sale of the taxi-cab business, in June or July 1994, Mr. Edukere gave to Plaintiff from the sales proceeds $3000.000 as a gift.

13. From 1994 to 1995, Godwin Edukere owned and operated a franchise business known as Jenny King. Later he operated a joint venture with a friend in the medical equipment supply business. In 2001, he started a medical equipment supply business known as Global Medical, which he operated until 2003, when he was arrested.

14. Between 1989 and 1994, Plaintiff worked as a registered nurse and presently works as a registered nurse.

15. Plaintiff purchased the residential real property known as 55 Hunter Point Road, Pomona, CA 91766 on July 27, 1994 ("PROPERTY"), for a purchase price of $208,500 with a loan in the amount of $198,000 from Home Savings of America. She refinanced the PROPERTY in 2002 and 2003.

16. Plaintiff and Mr. Edukere were married at the time of the purchase.

17. On July 25, 1994, Mr. Edukere, as Plaintiff's spouse, executed an Interspousal Transfer Grant Deed, granting the PROPERTY to Plaintiff, a married woman, as her sole and separate property.

18. Plaintiff holds title to the PROPERTY as her sole and separate property.

19. In order to purchase the property, Plaintiff paid a total of $13,500.00 for the down payment and closing costs.

20. $7,000 of the $13,500 was derived from the funds that Plaintiff gave to Mr. Edukere in 1987 for sake keeping.

21. $3,000 of the $13,500 was derived from the $3,000 which Mr. Edukere gave to Plaintiff as a gift in June or July 1994.

22. $3,500 of the $13,500 was derived from Plaintiff's savings, which were generated from her earnings between 1987 and July 27, 1994, which involved a period prior to her marriage in June 1989 and a period after her marriage..

23. Plaintiff resides in the PROPERTY with her three children, ages 19, 17, and 11 years, and Mr. Edukere.

24. Plaintiff has made all payments of interest, taxes, and insurance with respect to the PROPERTY from her earnings during marriage.

25. Between 1994 and 2004, Mr. Edukere made no contributions towards payment of the mortgage, insurance, property tax and costs of repair and maintenance for the PROPERTY.

26. On or about 2001, Mr. Edukere established a durable medical equipment supply business.

27. During Plaintiff's marriage to Mr. Edukere, she received income from her earnings. Since her marriage to Mr. Edukere, Plaintiff has never received any money as a gift from her parents or other relatives, and she has not received any inheritance. Plaintiff has not received any money during her marriage except from her employment and the $3,000 given to her as a gift by Mr. Edukere.

28. On or about 2003, Mr. Edukere was convicted following a jury trial of health care fraud in connection with his operation of the durable medical equipment supply business, in violation of 18 U.S.C. § 1347.  United States v. Godwin Edukere, CR 02-1273-ABC.  The district court sentenced him to 33 months imprisonment, and payment of restitution in the amount of $241,683.30.  The Ninth Circuit affirmed his

conviction and remanded his case for resentencing. On remand, the district court reimposed the same sentence.

29. The community did not derive any benefit from Mr. Edukere's criminal enterprise insofar as he did not make any contributions to the community during the period he ran the medical supply business nor did he make any contribution to the community from proceeds of the criminal enterprise. During the period of the enterprise, Plaintiff and Mr. Edukere maintained separate bank accounts.

30. In connection with his conviction, Mr. Edukere was ordered as part of the Judgment and Commitment to make restitution in the amount of $241,683.30.

31. On December 22, 2003, the United States recorded a judgment lien in the Office of the County Recorder of Los Angeles County against Godwin Edukere. Instrument Number 03-3842554. The lien does not mention Glory Edukere or contain a description of the PROPERTY.

32. Plaintiff first learned of the lien when she attempted to borrow money using the PROPERTY as collateral and the lender declined the loan because of the lien for the restitution judgment.

If any of these findings of fact are more properly conclusions of law, they are hereby incorporated in the part entitled "Conclusions of Law."

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this quiet title action pursuant to 28 U.S.C. § 2410(a).

2. Property owned by either spouse before marriage is that spouse's separate property. *In re Marriage of Weaver*, 127 Cal. App. 4th 858, 864, 26 Cal. Rptr. 3d 121, 125 (Cal. Ct. App. 2005).

3. The character of property as separate or community is fixed as of the time it is acquired, and the character is so fixed until it is changed in some manner recognized by law. *See v. See,* 64 Cal. 2d 778, 783, 51 Cal. Rptr. 888 (1966), *Ciambetti v. Department*, 161 Cal. App. 2d 340, 345 (Cal. Ct. App. 1958). The

|   |   |   |
|---|---|---|
|   |   | status or characterization of property as community or separate property is determined at the time of its acquisition. *In re Fabian*, 41 Cal. 3d 440, 446 (1986). |
|   | 4. | Where community and separate property are commingled, and property is purchased with mixed funds, and each contribution is clearly ascertainable, the character of funds remains unchanged. There is both a community and a separate interest in the property purchased. *Faust v. Faust*, 91 Cal. App. 2d 304, 309, 204 P.2d 906 (Cal. Ct. App. 1949). |
|   | 5. | The fact that Plaintiff gave $7000 to Mr. Edukere to keep for her does not change the character of those funds from separate property to community property. The $7000 obtained by Plaintiff before her marriage constituted Plaintiff's separate property at the time it was used by Plaintiff as a payment towards the purchase of the PROPERTY. |
|   | 6. | A spouse may make a gift to the other spouse of community property and such property becomes the separate property of the other spouse absent evidence of a contrary intent. *Ballinger v. Ballinger*, 9 Cal.2d 330, 333-34 (1937). The $3000 given to Plaintiff by her husband as a gift during marriage constituted Plaintiff's separate property, there being no evidence of a contrary intent by Godwin Edukere. It remained her separate property at the time it was used by Plaintiff as a payment towards the purchase price of the PROPERTY. |
|   | 7. | The $3500 paid towards the purchase price of the PROPERTY was partially separate property as to that portion generated from Plaintiff's earnings before marriage and partially community property as to that portion derived from Plaintiff's earnings after marriage. |
|   | 8. | "Community property" in California is defined as all property acquired by a married person during marriage, while domiciled in California in which each spouse has a "present, existing and equal interest." Cal. Fam. Code §§ 751, 760. |
|   | 9. | "Since a classification of property acquired or owned by married persons has a direct bearing upon third party rights, e.g. donees, creditors, devisees, etc., third |

parties have standing to contest the classification of marital property to the extent that their interests may be affected." Bassett, California Community Property Law § 6:11 (2006 Ed.)(footnote omitted).

10. The burden of proof that property is separate is on the party seeking to establish that the property is separate. *Falk v. Falk*, 48 Cal.App.2d 762, 767, 120 P.2d 714 (1941).

11. Earnings by a spouse during marriage when a spouse is not living separate and apart from the other spouse constitutes community property. Cal. Fam. Code § 760, 11 Witkin, Summary of Cal. Law (9th Ed. 1990) Community Property § 17, page 387.

12. There is a general presumption that all property acquired by either spouse during marriage is community property unless it was acquired by bequest, devise, descent, or gift. Cal. Family Code § 760, 770 (1). *In re Marriage of Haines*, 33 Cal. App. 4th 277, 289-290, 39 Cal. Rptr. 2d 673, 677 (Cal. Ct. App. 1995).

13. To rebut the general presumption, a spouse asserting a separate property interest must establish by preponderance of the evidence that the parties had a contrary agreement. *In re Fabian*, 41 Cal. 3d 440, 446, 224 Cal. Rptr. 333 (1986).

14. The general community property presumption is rebuttable by the spouses specifying a certain form of title. *Haines*, 33 Cal. App. 4th at 291.

15. Title presumption may be rebutted by clear and convincing evidence. *See id.*

16. Title presumption may be overcome by a broad range of evidence. *In re Ashodian*, 96 Cal. App. 3d 43, 49, 157 Cal. Rptr. 555 (Cal. Ct. App. 1979); *In re Marriage of Grinius*, 166 Cal. App. 3d 1179, 1189-1190, 212 Cal. Rptr. 803 (Cal.Ct. App. 1985).

17. Evidence of the source of funds used to purchase the property is insufficient in and of itself to rebut the presumption based on title. *Haines*, 33 Cal. App. 4th at 291; *In re Marriage of Lucas*, 27 Cal. 3d 808, 813, 166 Cal. Rptr. 853 (1980); *Ashodian*, 96 Cal. App. 3d at 48.

18. The general community property presumption can be overcome by a transmutation by the parties after the property is acquired. Cal. Family Code § 850.

19. Generally, when community property is used to reduce the principal balance on a promissory note secured by a deed of trust on a spouse's separate property, the community obtains a pro tanto interest in the property pursuant to the *Marsden/Moore* rule. *In re Marriage of Moore*, 28 Cal. 3d 366 (1980); *In re Marriage of Marsden*, 130 Cal. App. 3d 426 (Cal. Ct. App. 1982)*; see also Bono v. Clark*, 103 Cal.App.4th 1409, 1421-1422, 128 Cal. Rptr. 2d 31 (2002).

20. Characterization of the PROPERTY as community property pursuant to the general presumption that property is community when acquired by the parties during marriage has been rebutted by the parties causing the PROPERTY to be conveyed at time of acquisition to Plaintiff, "a married woman, as her sole and separate property."  Defendant has not presented any evidence that at the time of acquisition of the PROPERTY, Plaintiff and Mr. Edukere had a contrary agreement between them, either in writing, orally or otherwise.  Defendant has not by clear and convincing evidence rebutted the presumption of the PROPERTY being Plaintiff's separate property by reason of the title to the PROPERTY.

21. Further, the PROPERTY at the time of its acquisition was transmuted by the written interspousal transfer by which Mr. Edukere conveyed to Plaintiff the subject property as a "married woman as her sole and separate property."   As part of that transmutational process, the portion of the $3500 attributable to the Plaintiff's earnings after marriage was transmuted when it was used to pay towards the purchase price of the PROPERTY, which was conveyed to Plaintiff as her separate property with the agreement of her husband.

22. Defendant, as third party judgment creditor of Mr. Godwin Edukere, has a right to execute on its judgment lien on the PROPERTY to the extent of Mr. Edukere's undivided pro tanto community property interest with Plaintiff in the PROPERTY.

7

23. Plaintiff and Mr. Edukere have a community property interest in the PROPERTY on a pro tanto basis in a ratio that the payments towards the principal on the note secured by the property were and are from community funds, *i.e.* Plaintiff's earnings, compared to the payments made with Plaintiff's separate funds. *Moore*, 28 Cal.3d at 371-2.

24. Absent sufficient evidence by Plaintiff, having the burden of proof, the court is unable to apply the *Moore/Marsden* rule and formula to determine the exact percentage pro tanto interest the community has in the subject PROPERTY. No evidence was presented at trial as to the total amount of money which Plaintiff has paid from her earnings after marriage towards the principal balance as to the purchase price of the PROPERTY, which balance is secured by the PROPERTY.

25. Where community funds are used to make payments on property purchased by one of the spouses before marriage "the rule developed through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds. This rule has been commonly understood as excluding payments for interest and taxes." *Moore*, 28 Cal.3d at 371-72.

26. The instant quiet title action, presumably brought pursuant to 28 U.S.C. § 2410, as pled in the complaint attempts to establish Godwin Edukere has no interest in the PROPERTY. This court has concluded that Plaintiff and Godwin Edukere own a pro tanto community property interest in the PROPERTY.

27. Because Defendant, judgment creditor of Godwin Edukere, has a judgment creditor lien on Godwin Edukere's undivided one-half interest in the pro tanto community property interest, it may initiate proceedings to execute on the judgment lien as to that community property interest. If it does so, Plaintiff, as title owner of the PROPERTY, and/or Plaintiff and Godwin Edukere as owners of a pro tanto community property interest in the PROPERTY, may take necessary legal action to attempt to prevent the execution on the grounds that the community property

interest did not derive any benefit from Godwin Edukere's criminal conduct and therefore any community property interest in the PROPERTY is not available to satisfy the judgment for restitution. *Bell v. Bell*, 49 Cal.App.4th 300, 56 Cal.Rptr. 2d 623 (Cal. Ct. App.1996); *In re Marriage of Stitt*, 147 Cal.App.3d 579, (Cal.Ct.App.1983). Such future actions by the parties do not involve or implicate this quiet title action.

29. Judgment in this quiet title action should be entered as follows:

Plaintiff Glory Edukere, a married woman, owns as her sole and separate property that real property in the City of Pomona, County of Los Angeles, State of California described as: Lot 19 of Tract No. 34343 as per map recorded in Book 949, pages 66 to 68 of Maps of Record in the Office of County Recorder of said county, hereinafter "subject property."

Plaintiff Glory Edukere and Godwin Edukere have a pro tanto community property interest of an undetermined percentage in subject property; and

Defendant United States of America as a judgment creditor of Godwin Edukere has a valid lien pursuant to the judgment of restitution in *United States v. Edukere*, CR 02-01273, on Godwin Edukere's undivided one-half interest in the community property interest in the subject property.

If any of these conclusions of law are more properly findings of fact, they are hereby incorporated in that part entitled "Findings of Fact."

DATED: July 21, 2008           <u>ROBERT J. TIMLIN</u>
                               ROBERT J. TIMLIN
                               UNITED STATES DISTRICT JUDGE